# United States Tax Court

T.C. Memo. 2023-37

CHARLES LIN AND AMY LIN,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 34218-21.                    Filed March 21, 2023.

————

Charles Lin and Amy Lin, pro sese.

*William J. Gregg*, for respondent.


## MEMORANDUM FINDINGS OF FACT AND OPINION

LAUBER, *Judge*: With respect to petitioners' Federal income tax for 2019 the Internal Revenue Service (IRS or respondent) determined a deficiency of $4,679.[1] This deficiency reflected a determination that petitioners had failed to report the full amount of retirement income, taxable Social Security benefits, and dividends they had received. On an amended return for 2019 petitioners reported an increased rental loss on Schedule E, Supplemental Income and Loss. We sustain a portion of the deficiency attributable to the omitted income and hold that petitioners are not entitled to the additional rental loss deduction they claim.

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code (Code), Title 26 U.S.C., in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

[*2]                 FINDINGS OF FACT

Some facts have been stipulated and are so found. The Stipulation of Facts and the attached Exhibits are incorporated by this reference. Petitioners resided in Virginia when they timely petitioned this Court.

Petitioners were retired in 2019. They received during that year investment income, Social Security benefits, and retirement benefits. On their timely filed Form 1040, U.S. Individual Income Tax Return, for 2019 they reported (as relevant here) dividends of $4,010, taxable Social Security benefits of zero, and retirement benefits of $61,976, of which they reported $50,629 as taxable.

On their 2019 return petitioners reported on Schedule E a rental real estate loss of $8,189. They incurred this alleged loss upon renting a room in their home to a close friend who needed a place to stay for ten months before returning to Taiwan. Petitioners charged the tenant a modest rent of $300 per month, yielding total rental income of $3,000. They did not execute a written lease with this tenant.

Petitioners resided in a three-floor house in suburban Virginia, which had been built in 1994. The tenant occupied a bedroom on the basement level with an adjoining bathroom and also had use of a kitchen. Other rooms in the basement included a utility room, a recreation room, a storage room that housed air conditioning equipment serving the entire house, and a second storage room. Petitioners used the second storage room, and the tenant temporarily stored some luggage there.

Against the $3,000 of rental income petitioners offset expenses of $604 for insurance and $10,430 for taxes. These alleged expenses totaled $11,034, but petitioners on their Schedule E incorrectly summed these amounts as $11,189. The $604 insurance expense was the amount paid for insurance on the entire house. The $10,430 tax expense was the sum of the property taxes paid on the entire house and on a timeshare property that petitioners owned in Florida.[2] Petitioners supplied no evidence concerning the square footage of the space occupied by the tenant, the square footage of the entire house, or the percentage that the former represented of the latter.

---

[2] Petitioners elected the standard deduction on their 2019 return and thus could not claim property taxes paid as deductions on Schedule A, Itemized Deductions.

**[*3]** The IRS issued petitioners a timely notice of deficiency that determined omitted income on the basis of third-party reporting. The notice determined that petitioners for 2019 had received, but failed to report, additional dividend income of $282 (of which $68 was "qualified") and Social Security benefits totaling $32,808. The notice determined that 85% of the latter amount was taxable, producing an adjustment of $27,887. The notice determined that petitioners had received other retirement income totaling $61,973[3] and that 100% of this amount was taxable, producing an adjustment of $11,344. The notice did not challenge petitioners' $8,189 Schedule E loss.

On June 17, 2021, petitioners filed an amended return for 2019. On this return petitioners admitted receipt of $282 of additional dividend income. On the basis of that concession we will discuss this adjustment no further.

On their amended return petitioners again reported $50,629 of taxable retirement income. They noted that the U.S. Railroad Retirement Board had issued them Forms 1099–R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., reporting that $8,213 of its distributions to them was nontaxable. Petitioners reported that another $3,134 of those distributions was excludable from income as "rollovers." *See* § 408(d)(3). At trial respondent stated that he is no longer pursuing the $11,344 adjustment relating to unreported retirement income.[4] On the basis of that concession we will discuss this adjustment no further.

On their amended return petitioners admitted receiving $32,808 of railroad retirement benefits. That was the total amount of Social Security benefits determined in the notice of deficiency. But petitioners reported that only $8,793 of that sum was taxable.

Finally, petitioners claimed on their amended return a Schedule E loss of $30,763, as compared with the loss of $8,189 they had originally reported. The increased loss, which eliminated the $155 math error appearing on their original Schedule E, was attributable to the

---

[3] The $3 difference between this sum and $61,976—the amount shown for "pensions and annuities" on petitioners' return—is attributable to a rounding error.

[4] The $3 difference between the $11,344 adjustment and $11,347—the total amount of nontaxable distributions shown on petitioners' amended return—is attributable to the rounding error noted *supra* note 3.

4

[*4] following previously unreported expenses, all of which were allegedly incurred in connection with rental of the basement room:

| Item | Amount |
|---|---|
| Cleaning and maintenance | $655 |
| Legal and professional fees | 955 |
| Repairs | 3,913 |
| Depreciation | 17,051 |
| Homeowner's association fee | 155 |
| Total | $22,729 |

At trial petitioners stated that the "cleaning and maintenance" expense was incurred in connection with maintenance of air conditioning equipment that served the entire house. The "legal and professional fees" were incurred for preparation of their 2019 income tax return. The "repairs" expense was incurred in connection with renovation of their basement bathroom but only after the tenant had moved out. The depreciation expense was calculated on $468,947, the tax basis of their entire house. The homeowner's association (HOA) fee appears to have been incurred in connection with their time-share property in Florida. As with the Schedule E expenses reported on their original return, petitioners supplied no evidence concerning the square footage of the space occupied by the tenant, the square footage of the entire house, or the percentage that the former represented of the latter.

OPINION

After giving effect to the parties' concessions, two issues remain for decision: the amount of petitioners' allowable Schedule E loss and the taxable amount of their Social Security benefits.

A.  *Schedule E Loss*

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving them erroneous. *See* Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). Petitioners do not contend that the burden of proof with respect to any factual issue should shift to the Commissioner under section 7491(a).

[*5]    Deductions are a matter of legislative grace, and taxpayers bear the burden of proving their entitlement to any deduction claimed. Rule 142(a); *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992). A taxpayer must show that he has met all requirements for each deduction and keep books or records that substantiate the expenses underlying it. § 6001; *Higbee v. Commissioner*, 116 T.C. 438, 440 (2001). Failure to keep and present such records counts heavily against a taxpayer's attempted proof. *Rogers v. Commissioner*, T.C. Memo. 2014-141, 108 T.C.M. (CCH) 39, 43.

During 2019 petitioners rented a room in their basement to a close friend who needed a place to stay, charging her modest rent of $300 per month. On their amended return petitioners claimed that this transaction generated a loss of $30,763. In considering this issue we assume arguendo that petitioners entered into a profit-seeking transaction, as opposed to making a gift to their friend. We assume arguendo that petitioners could show that they actually incurred during 2019 the expenses shown on their amended return. And we assume arguendo that petitioners "actively participated" in the rental activity, so as to be able to deduct a rental real estate loss that did not exceed $25,000. *See* § 469(i).[5] We hold that petitioners have nevertheless failed to carry their burden of proof because they have supplied no evidence to establish what portion (if any) of the additional expenses reported on their amended return was properly attributable to their rental activity.

The additional expenses reported on the amended return included an HOA fee of $155, cleaning and maintenance of $655, depreciation of $17,051, professional fees of $955, and repairs of $3,913. The HOA fee appears to have been incurred in connection with petitioners' time-share property in Florida. In any event, petitioners supplied no evidence that the HOA fee was paid on their home in suburban Virginia. That expense thus had no relationship to the rental of their basement room.

The cleaning and maintenance expense was incurred in connection with maintenance of air conditioning equipment that served the entire house. The depreciation expense was calculated on $468,947, the cost basis of the entire house. Petitioners supplied no evidence concerning the square footage of the space occupied by the tenant, the square

---

[5] Section 469(i) permits a taxpayer who "actively participated" in rental real estate activity and whose AGI is below $100,000 to deduct up to $25,000 of rental real estate losses annually, notwithstanding the limitations on deduction of "passive losses."

[*6] footage of the entire house, or the percentage that the former represented of the latter. They thus failed to carry their burden of proving what portion of these expenses was fairly allocable to the space occupied by the tenant. And assuming arguendo that some portion of their tax preparation fees could be allocated to the basement rental, they have failed to discharge their burden of proof for the same reason.[6]

The $3,913 repair expense was incurred to renovate the basement bathroom. Assuming arguendo that this was a repair expense rather than a capital improvement, petitioners have failed to carry their burden of proof. They incurred this renovation expense, not to prepare for the tenant's occupancy, but only after she had moved out. Petitioners supplied no evidence that they had ever rented the basement room before or that they ever rented it again. Rather, the rental transaction was a one-time event occasioned by their friend's need for temporary lodging. That being so, we do not think that renovation costs incurred after the tenant left can reasonably be viewed as allocable to the rental.[7]

In sum, we conclude that no portion of the additional Schedule E loss reported on petitioners' amended return is allowable as a deduction. We will not disturb the $8,189 loss deduction claimed on their original return, which the IRS did allow.

B.  *Taxable Social Security Benefits*

Petitioners concede that they received during 2019 railroad retirement benefits totaling $32,808. Such benefits are treated as Social Security benefits for purposes of determining the portion taxable under

---

[6] Under *Cohan v. Commissioner*, 39 F.2d 540, 543–44 (2d Cir. 1930), if a taxpayer claims a deduction but cannot fully substantiate the underlying expense, the Court in certain circumstances may approximate the allowable amount, "bearing heavily if it [so] chooses upon the taxpayer whose inexactitude is of his own making." The taxpayer must supply some factual basis for an estimate, however, or the allowance would amount to "unguided largesse." *Williams v. United States*, 245 F.2d 559, 560 (5th Cir. 1957). Petitioners have not supplied any factual basis on which we could estimate the expenses fairly allocable to the space occupied by the tenant.

[7] Assuming arguendo that the $3,913 repair expense should be viewed as allocable to the rental, we would still conclude that petitioners are entitled to no additional Schedule E loss deduction. The $8,189 loss reported on their original return was significantly inflated because they claimed 100% of the insurance and property taxes—including property taxes attributable to the Florida time-share—as allocable to the basement apartment. If that error were corrected, allowance of a $3,913 repair expense would not yield a Schedule E loss deduction greater than the $8,189 loss deduction the IRS allowed.

[*7] section 86(a). *See* § 86(d)(1)(B). The parties' dispute focuses on that calculation: Petitioners contend that the taxable amount is $8,793, and respondent contends that the taxable amount is $27,887, or 85% of the total. We agree with respondent.

In order to make this calculation we must first determine whether petitioners are "taxpayer[s] described in" section 86(b). *See* § 86(a)(1). A taxpayer is described in section 86(b) if his "modified adjusted gross income" for the year (modified AGI), plus one-half of the Social Security benefits received during the year, exceeds the "base amount." § 86(b)(1). The "base amount" for taxpayers who filed a joint return is $32,000. *See* § 86(c)(1)(B). Modified AGI is determined "without regard to this section," i.e., without regard to the taxpayer's receipt of Social Security benefits. *See* § 86(b)(2)(A).[8]

For 2019 petitioners had modified AGI of $53,456—adjusted gross income of $53,174 as reported on their original return, plus $282 of omitted dividend income. Adding to that sum one-half of their Social Security benefits, or $16,404, yields $69,860. That total exceeds petitioners' "base amount," or $32,000, and the amount of that excess is $37,860. Petitioners are thus "taxpayer[s] described in subsection (b)." *See* § 86(a)(1).

Section 86(a)(1) generally provides that, for any taxpayer described in subsection (b), gross income includes Social Security benefits in an amount equal to the lesser of (A) one-half of the Social Security benefits received or (B) one-half of the excess described in subsection (b)(1). One-half of the Social Security benefits petitioners received is $16,404. One-half of the excess described in subsection (b)(1) is $18,930 ($37,860 × 0.50). Since $16,404 is the lesser of these amounts, that would be the taxable portion of petitioners' Social Security benefits determined under section 86(a)(1).

Section 86(a)(2), captioned "Additional amount," provides that taxpayers are taxable on a larger portion of their Social Security benefits in certain circumstances. This subsection applies if "the amount determined under subsection (b)(1)(A) exceeds the adjusted base amount." As noted above, the amount determined under section 86(b)(1)(A) is $69,860. For taxpayers who filed a joint return, the "adjusted base

[8] "Modified AGI" includes tax-exempt interest received by the taxpayer and is determined without regard to certain other Code sections. *See* § 86(b)(2). None of these additional refinements is applicable here.

[*8] amount" is $44,000.  *See* § 86(c)(2)(B).  Because the former exceeds the latter—the amount of such excess being $25,860—petitioners are covered by section 86(a)(2).

Under section 86(a)(2)(A), the taxable portion of Social Security benefits equals the sum of (i) 85% of "such excess" plus (ii) the lesser of the amount determined under subsection (a)(1) or one-half of the difference between the taxpayer's "base amount" and "adjusted base amount." Eighty-five percent of "such excess" is $21,981 ($25,860 × 0.85). The amount determined under subsection (a)(1) is $16,404, and one-half of the difference between petitioners' "base amount" ($32,000) and "adjusted base amount" ($44,000) is $6,000.  Adding the lesser amount, or $6,000, to $21,981 yields $27,981 of taxable Social Security benefits.

Under section 86(b)(2)(B), however, the taxable amount of Social Security benefits cannot exceed 85% of the benefits received.  For petitioners that amount is $27,887 ($32,808 × 0.85).  Because that amount is less than $27,981, the amount calculated under section 86(b)(1)(A), the taxable portion of petitioners' Social Security benefits is $27,887, as determined in the notice of deficiency.

To implement the foregoing,

*Decision will be entered under Rule 155.*